Next case for oral argument is case number 2009-7046, Rodrigo v. DVA. Ms. Brady, whenever you're ready. Ms. Brady, whenever you're ready. Yeah, may it please the court, Virginia Gerard Brady appearing on behalf of the appellant, Leroy Rodrigue. The appellant in this case is asking the court... Speak up. Speak up, okay. The appellant is asking the court to review the decision by the Court of Appeals for veterans claims in this case and specifically asking the court to find that the CAVC misinterpreted the plain language of 38 U.S.C. 5103A, subsection D, which specifically pertains to the VA's obligation to provide a veteran with a VA examination and or obtain a medical opinion in those instances in which the record before the VA indicates that the veteran's disability that he claims may be associated with his active military service. Maybe, so some showing is necessary. Something has to be there, absolutely. What was there in your case other than he happened to be in Thailand? Well, in fact, in this case, there was evidence that... Now, I'll tell you, because I know what you're getting at. You're getting at the lay statements issue, which is, in fact, this case is a little bit odd because the board actually denied the veteran's claim on two separate bases. Denied on lack of evidence of incurrence, what it found to be lack of evidence of incurrence, that being exposure to Agent Orange, as well as a lack of evidence of medical nexus to establish that the veteran's disability was related to exposure to Agent Orange. On appeal to the court, we actually argued that the lay evidence was sufficient, which is an entirely different argument. Had the court addressed that argument, then I would be before you with a lay statements argument. We would be discussing Washington, Buchanan, and we'd be discussing whether or not, as a matter of law, that lay evidence was sufficient to establish incurrence in this case. However, that's not... You're asking us to apply facts to law in a particular situation? No, absolutely not. In this case, the court found that the veteran was not entitled to an exam because there was no persuasive evidence of direct nexus in this case. So, therefore, the court found that in order to trigger the VA's duty to assist to provide him with an exam or obtain a medical opinion in this case, there had to be persuasive evidence of direct nexus between the veteran's disability and exposure to Agent Orange. And, in fact, what the court said was, it's immaterial to us whether or not he was actually exposed because there is no direct evidence of medical nexus in this case. Well, in the decision of the court, it seems to me that the parts of the decision that you're just referring to were related to the ultimate conclusion of service connection. And it seems to me the court, you know, recognized the fact that there had to be some showing of nexus in this case because this was not a table decision. This was something off table and that the court then went on to point out the standard, the maybe associated standard, spelled that out in the opinion, talked about 5103 AD, talked about the elements that need to be met. So, I'm having difficulty in discerning where it is that you think the court went wrong in interpreting that statute when it actually referenced the very test that you're asserting should have been applied, that may be associated. It did reference that and it did discuss the relevant case law and the statute that we're challenging. However, what it found was that the evidentiary standard necessary to trigger the secretary's duty to assist to obtain that examination was much more stringent than is actually contemplated by the plain language of that regulation. By requiring the veteran to actually produce evidence that establishes nexus. But he said it was a low threshold. He said it was a low threshold. But in fact, when he actually said whether or not the veteran had met that threshold, he said, well, he needs to produce evidence that establishes nexus. Well, that gets to Judge Garris' point. He doesn't have to establish service connection to get an exam. That gets to Judge Garris' point, does it not? It all comes down to a weighing of facts and evidence and applying the facts to the law. It's not a question of interpretation of a statute. The statute is quoted. The correct standard is cited. And the reference to the McClendon case that even discussed the fact that that standard should be applied as a low threshold. And then it's just, obviously you disagree with the factual conclusion. Well, I'm not asking the court to look at whether or not the evidence was sufficient to trigger an exam. That's not what I'm asking the court to do. And I'm not saying that they didn't cite the proper threshold, but they did not employ the proper threshold. When the court actually, what the court said was. So they made a mistake in applying the law to the facts. I would say that they employed an evidentiary standard that is higher than the threshold that they actually cited. They said this is the threshold, but then the threshold that they actually relied upon to deny the claim was higher. That that was the threshold. They said instead of saying, they said they cited the law accurately. I'm not disputing that. But when they actually denied the claim, they denied the claim based on an evidentiary standard and a finding that he needed a higher evidentiary standard, a higher threshold than the law actually, than the court actually cited. And they cited the correct law. And I can see how you'd think that this was an application question. And I'm not saying that. I do. It's up to me that that's exactly what you're arguing. Where is it not an application question? Well, I'm not asking the court to look at the underlying facts and decide whether or not that evidence satisfied the threshold or did not satisfy the threshold. That's not what I'm asking. But they applied the law to the facts. The low threshold is evidence that may indicate a possibility. It's a may be associated. It is evidence in McClendon. Judge Cassel talked about what that is. And he says it's evidence if it's not specific enough. If it's evidence that's inconclusive. If it's insufficient to establish. Your argument is that, if I understand it, is that before they applied the law to the facts of your case, they came up with an understanding of the law that was incorrect. Is that right? I believe so, yes. And, therefore, your case is one in which they misunderstood the law before they applied it to the facts. And the fact that they later applied it to the facts is not what you're arguing about. Yeah, I'm not really arguing about what the facts were or were not in this case. What I'm saying, though, that when the court made its decision, that it said a low threshold. But, in fact, when it said that the appellant had not presented persuasive evidence of a direct nexus, that is not a low threshold as a matter of law. On the other hand, if they had a concept of the law that was incorrect, it's only their application of that incorrect law to your facts that really raises the issue before us, isn't it? Yes. And I would say that the finding in this case actually is directly contrary to McClendon. Because, in fact, I mean, this court acknowledged that there was some evidence. This court has said, all you need is some evidence. I'm not asking you to look at the evidence to decide whether or not, but we're saying, what is that threshold? What constitutes that threshold? They say low threshold. Well, the way they interpreted that low threshold. Can we do that in the abstract? I think so. I think you can say that, as a matter of law, if a veteran files a claim and there is absolutely nothing in the record that indicates any association or any relationship between the disability and service, that there's no duty to assist. The question is, when does it trigger? When is the duty to assist triggered under 5103? When does that plain language, what does it mean when it says indicates may be associated with service? Some evidence. Some evidence. Whether or not that's, I mean, that's all it takes. But you still would ask us, though, to take a look at the evidence and determine whether or not it meets the threshold. I'm telling you that the, I'm sorry, excuse me. My position is that, I apologize for that. Just listen, will you, for heaven's sake. The poem's position is that we're not arguing about what the evidence or whether we met that threshold. We're not asking that. The argument is, and maybe I am not setting it out very, very, I'm not clarifying it very well. However, the threshold is low. There has to be some evidence. What kind of evidence that is, how much evidence, we would argue, well, if there's a question below by the fact finder, by those who can apply fact to law and make factual findings, that if there's a question of whether it's enough, then reasonable doubt comes into play and the veteran gets the benefit of reasonable doubt. In this case, the court made a finding. The court found that the veteran had to submit or the record had to contain more evidence than is actually contemplated by the plain language of the statute. That if, the court in this case found that the VA's duty to assist wasn't triggered unless there was evidence of a direct nexus. If there had been that type of evidence, we wouldn't even be here because that would have substantiated the claim and the VA wouldn't have even had to assist him at that point because it would be done. That's a done deal. If that evidence had existed, if the evidentiary standard that the court relied upon in this case had actually existed, evidence of that nature had existed, then 5103A subsection D wouldn't even come into play because there would be no need for an exam because that evidence would already exist. That's the best way I can put that argument, although I think I still see skepticism. Well, don't be distressed because we don't know what Congress had in mind when they wrote that standard of review either. That is, I've never figured out how you understand what a standard is in the absence of the facts against which you are applying the standard, but Congress wants us to do that. I understand. I understand. I'm asking the court to look at that evidentiary standard and to maybe provide some guidance as to that low threshold and maybe what is necessary to cross that threshold. And I would assert or I would ask that the court find that as long as there is some evidence that is indicative of a relationship, that the veteran has met that threshold. What do we do about the court's view that even if he'd been exposed, is it Rodriguez, is that how the name is? Rodriguez would not be able to establish a nexus between his current disabilities and Agent Orange. What do we do about that finding? Well, the problem is that I didn't specifically see a finding by the court. I mean, the court did not specifically. They acknowledged that we had made that argument, but they didn't really specifically address it. They didn't address the actual argument that we made before the court on that, whether or not that lay evidence was competent and sufficient to establish incurrence and exposure. So if this court would find that the CABC applied the wrong evidentiary standard and that it needs to be sent back for compliance, for reconsideration compliance under the law, then at that point we would again probably address the lay state. And if they disagree with our argument or we finally get a decision on our lay statements from the CABC, we may be seeing you again in this case. I don't know. It just depends. Can I save the rest of your time for rebuttal? Yes. Thank you. Mr. Gillingham. Tell us why we don't have jurisdiction. Good morning, Your Honor. And may it please the court. Because in this case the court only applied the facts to the law. The key to the court's decision is found on page 2 of its decision, where it writes, sorry, page 3. And this goes to the question of what must the veteran have shown, evidence about what. And the court said, this is not a case of whether the appellant's alleged exposure to Agent Orange might be sufficient to cause myasthenia gravis when a causal link has been previously identified. Rather, the question is whether there is any evidence acknowledged by the medical community that Agent Orange can cause myasthenia gravis at all. The court had skipped over the question of presumptive service because, as the court and the board recognized, the diseases that Mr. Rodriguez possesses, myasthenia gravis and sleep apnea, are not those diseases that are subject to this presumption. So then the court was forced to jump to the next inquiry, which is whether it can, whether Mr. Rodriguez can establish his ultimate question of nexus. And the court said basically that will involve two things. First of all, you're going to have to convince us that there is a link between Agent Orange, per se, and myasthenia gravis. In the background, there is this regimen that every two years the Academy of Science issues reports studying a wide variety of diseases, and they have studied autoimmune disorders, not specifically myasthenia gravis to my knowledge. They then recommend to the Secretary of Veterans Affairs that certain diseases either be presumed to be connected or not. Within six months of the receipt of that, the Secretary must make a determination as to whether, in fact, diseases qualify for presumption. In fact, the Secretary announced such a decision just two weeks ago, in October of this year, and then 60 days later the Secretary must issue proposed regulations. To make that list, all that has to be shown is a positive association with Agent Orange, or rather low threshold, any credible scientific evidence, basically. And so this regimen of study of diseases and links to Agent Orange has yielded no association with Agent Orange. And the Secretary's regulations say, as the board said on page seven of its decision, that when the Secretary updates its regulations and identifies those diseases that are linked with Agent Orange, it also says, and no others may be presumed to be unless specifically identified. Excuse me, Mr. Gellin. Just a question, because I'm really bothered by the fact that they said it was a low threshold that has to be met. Hypothetically, if the veteran had a doctor's examination showing an effect that Agent Orange did cause a sleep apnea, would that be sufficient to overcome the objection in the DBA? Well, first of all, assuming... Assuming hypothetically. He had his own examination by a private doctor, and the private doctor said, yes, you were exposed to Agent Orange, whether it was in Vietnam or Thailand, there was exposure to some contamination of Agent Orange. And that is causing your present sleep apnea. Would that be sufficient? The board, the court, would have to make a credibility finding as to whether that was sufficient. So, for example, something scribbled on a piece of paper saying, I think Agent Orange causes sleep apnea might not meet that threshold. Let's say it's a ten-page report from a doctor at Johns Hopkins. Let's say that the court finds it credible. Would that be sufficient? If there is a connection, there's a possibility of a connection to... No, no, you're mincing words. No, what has to be... The doctor's report said, hypothetically, I've examined this patient, he was exposed to Agent Orange, he tells me, and the record does reflect that he had some exposure to Agent Orange in Thailand, and that exposure has caused his present condition of sleep apnea. Sure. Would that be sufficient? I think if there was a statement of in-service incurrence of sleep apnea or some suggestion that sleep apnea existed, and the doctor's credible statement that I have determined, based on my research, that Agent Orange causes sleep apnea, that would be sufficient to get him a medical exam. Not now you're writing the report for the doctor. Well, we're back into the question of credibility. You'd have to get over the hurdle of whether the court would accept it as credible. But if it found it credible, that's the kind of evidence that the court was actually looking for here, some evidence. How does the doctor's report in Judge Garris' hypothetical relate to what might be accepted by the medical community as causation? Isn't the standard? The question is whether there is any evidence accepted by the medical community to show a possible link. It doesn't have to be an absolute connection, just a possible that it might possibly be the cause. And if that's the standard, is it enough that one doctor says, in my opinion, there's a connection? That's a credibility question. I don't think the court intended to say that the doctor would have to demonstrate that this is widely accepted in the medical community. On the other hand, if in studying it, it was clearly the opinion of a I'll use the word crackpot, the court could make that credibility assessment. And the kind of cases where the veterans' court has allowed an opinion, something like the veteran testifies that he was a paratrooper, that he jumped 30 times a month, that he began to feel back pain. Now, 25 years later, he has a diagnosis that in his lower lumbar region, he has back pain, and his doctor says, this is the kind of pain that can be caused by the compressive force of paratroopers jumping. I'm not saying it is, but I'm saying there's a possible connection there. In cases like that, the court has said, now we have a possible connection. Now there's actually a possibility of a connection. You've submitted some evidence of that connection, and we're going to order a medical report. Other reports are reports of blurriness of vision, loss of hearing in service, and the doctor testifies, well, he has tinnitus. And tinnitus could come from, for example, exposure to jet engines that's been testified to. So your position is that it's sufficient if a medical doctor gives an opinion that might, shall we say, withstand some scrutiny, that as being a legitimate opinion, that that's sufficient to meet the low threshold, that there doesn't need to be anything more in terms of some evidence that the medical community, as a matter of scientific understanding, recognizes the possibility of a connection. I think that all the court was saying there was that there had to be competent medical evidence. Now, it could weigh medical evidence, but if it found that there was some evidence that was credible, it was not, in my example, from a crackpot. Again, the perfect examples are physical ailments, loss of vision, loss of hearing, joint pains, things like that where the veteran is perfectly situated to provide lay testimony. On the service incurrence side, a doctor can easily, and most laymen can appreciate this, provide a medical diagnosis to say these two things are potentially linked. So, for example, in the case I gave about the paratrooper, it could well be that the actual cause of the lower lumbar pain was because the patient was in a construction accident three weeks earlier. That could be the actual cause. But because there was a possibility of the link between evidence on the in-service incurrence side and evidence on the current disability side, that's sufficient, and the court has recognized that. It doesn't have to be a full study that's made by a university hospital to show that there was a connection between sleep apnea and Agent Orange. It doesn't have to be a study prepared for the FDA type of information. It can be an individual review by a doctor who is competent. I think that's true. There's no rule that says that, and the Veterans Court has never held that to my knowledge. You're suggesting that the evidentiary basis for that link is a question of fact based on credibility that the board makes. To what extent can we review that issue? Well, you can't. There, it's simply applying facts to the law, and this court has held before that it will not apply the facts to the law in cases like Wells. The principi, it has simply stayed out of the business of deciding whether the case had been made that the elements of proof had been satisfied on a claim for a medical instance. Even if the issue is, as the Court of Veterans Appeals said, it's essentially a question of scientific causation. We don't get to review scientific causation? No. That sort of went to the credibility determination. In the sentence that I read at JA Roman numeral three, what the court was saying was the kind of information we need to make this link is to say that it's possible, especially given all the work that's been done by the National Academy of Sciences and by the Secretary of Veterans Affairs, that with that in mind, you have to show us something that says Agent Orange could cause this kind of disease. And then you've got the more parochial question of, is there a link between a symptom that Mr. Rodriguez suffered or sensed while in service and what was going on now? And that was missing. To fill that void. Well, it's clear we can't look at that second, what you call parochial issue. Right. The question of direct causation. You're also arguing we can't look at the first. I don't see that they're distinct at all. I mean, the facts of this case require ideological evidence, medical evidence concerning the possibility, just the possibility at all, as the court said, that Agent Orange could etiologically cause this kind of a disease. The studies are actually quite impressive. The first one cited by the board, I think it's on page seven of the board's opinion, it described the system of these studies. And the first Federal Register notice of updating the Secretary's regulation was in 1994. And if you pull that Federal Register notice, you see that the court, the Secretary's notice said in that case that it had studied over 6,400 reports summarized by the Academy of Science. And I think there was another 300 studies that were done on top of that that the Secretary reviewed. That was in 1994. And it does these things, as I say, about every two years. The Academy of Science reviews it. So it's an impressive body of literature looking for any connection whatsoever. And in the face of that, having only three statements. One, a statement that myasthenia gravis could be associated with toxic chemicals, not identifying the toxic chemicals. Second, that myasthenia gravis is an autoimmune disorder. And three, that Agent Orange could have effect on the immune system. It's kind of like saying, I have the flu. Being out in the cold and wet could cause me the flu. I have the flu, therefore I was cold and wet. There's just too many moving parts in that logic to be able to say for sure that what's required by this case, which is evidence that Agent Orange can cause these kind of diseases, is present at all, let alone the more parochial question of whether it was a link here. It seems to me the colloquy we've been having for the past several minutes gets right back to the point that Judge Plager mentioned in the very beginning about how odd it is that we are in a position where we have to decide, as a matter of the legal standard, what the threshold should be and what the legal standard may be associated should be, without considering the facts when it seems to me that that question is very fact-specific, that what may be associated with Agent Orange in certain cases with certain diseases may be more readily apparent to people than in other cases under different circumstances. It's hard to sort of consider what the proper legal standard is and where you draw the line with respect to the low threshold if you don't put it in any factual context. Right. Well, this Court's entree into any one of these decisions is, of course, circumscribed by 387292A, which says the jurisdiction to review a decision begins with the validity of a decision on a rule of law or any statute or regulation or interpretation thereof. We simply have no such thing here. So, therefore, you'd be left with having to make a decision. In essence, you'd be giving an advisory opinion. And I wouldn't fret that the only announced standard here is the low threshold or, as this Court said in Wells, some evidence or, as the statute 3159 says, may be associated with. That's good enough. The criminal world has gotten along for many years with probable cause. Any efforts to further define those don't get any better than coming out with probable cause. So we have a standard. Whatever issues remain to be decided are really fact issues or application of fact, law to fact, because the standard is sufficient. The standard doesn't need to be a bright-line standard, necessarily, that there is guidance. I think there's a plenty sufficient standard. And until some court does what Mr. Rodriguez accuses this Court of doing, that is, applying some other standard, then this Court will not have an opportunity to revisit this again. The truth is here that until the Secretary or the Academy of Sciences identifies a link to myasthenia gravis or sleep apnea, claims like this just won't succeed. Mr. Billingham, your time is up. Yes, Your Honor. Thank you very much. Thank you. Ms. Brady, you have a few minutes left for your rebuttal. Thank you, Your Honor. Just very quickly, I would say that if the CABC in this case had made the finding that this evidence doesn't meet the low threshold, there would be nothing for me to argue here because that would absolutely be an application of law. They say they looked at the evidence, they applied it. No. But what they did instead was they said it doesn't meet the low threshold because there is no evidence of a direct nexus. And that's the part that bothered me and that's the part that I see a problem with as a matter of law because that's where they applied a higher and stricter evidentiary standard than is actually contemplated by the statute. It's higher than the threshold. It's greater that when they say they need evidence of a direct nexus, that's more than just a possible association or indication that it may be associated with. That's where the crux of this lies and where that duty is triggered within the context of that statute. So we are asking the court to look at an evidentiary standard that is hard, which is also why we say that this is a system in which the benefit of the doubt is supposed to go to the claimant and to the veteran. And that if there is some evidence, the veteran should get the benefit of the doubt. The VA provides him with an exam, gets an opinion. If that opinion does not substantiate the claim, then we're done. If it substantiates the claim, we're done. He gets granted or denied at that point. But at least the VA has complied with its duty to assist under that statute. And I would just say, in closing, that in McClendon, one of the things that it said in that decision, and this is 20 Vet App 79 at 83, it does say that the types of evidence that indicate that a current disability may be associated with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. It is not the type of evidence that must be conclusive in any way or establish a relationship. It just has to indicate. Thank you, Ms. Brewer. Thanks.